IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **REGIONS BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No.: _____ |
| v. | ) |
| | ) |
| **WYNDHAM HOTEL MANAGEMENT, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Regions Bank ("Regions") state its claims against Defendant Wyndham Hotel Management, Inc. ("Wyndham") as more fully set out below:

### PARTIES

1. Regions is an Alabama corporation with its principal place of business is Birmingham, Alabama.

2. Wyndham Hotel Management, Inc., is a Delaware corporation with its principal place of business in Parsippany, New Jersey.

### JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1), in that it is a civil action in which the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different States. Further, the Court has jurisdiction with regard to the declaratory relief sought pursuant to 28 U.S.C. § 2201.

4. This judicial district is the proper venue for this action pursuant to 28 U.S.C. § 1391 (a)(2), in that a substantial part of the events giving rise to this lawsuit occurred in this

judicial district. Among other relevant facts, the Subordination and Non-Disturbance Agreement was negotiated, on behalf of Regions, by its Real Estate Loan Administration group located at 315 Deaderick Street; Nashville, Tennessee 37238-0707 and executed in Nashville, Tennessee, by Regions' Vice President Carey Rosenbaum.

## FACTS

### BACKGROUND

5. From 2002 through 2008, Joseph Shereshevsky and Steven Byers presented themselves as investment advisors making private placement offerings through their entities Wextrust Capital, LLC ("Wextrust"); Wextrust Equity Partners ("WEP"); Wextrust Development Group, LLC ("WDG"); Axela Hospitality, LLC ("Axela"); and Wextrust Securities, LLC ("Wextrust Securities") (collectively, "the Wextrust Entities").

6. Between 2002 and 2008, Shereshevsky, Byers, and the Wextrust Entities conducted at least 60 private placement offerings and created approximately 150 entities in the form of limited liability companies or similar vehicles to act as issuers or facilitators of the offerings. Through these private placement offerings, they sold securities to investors in the form of investment contracts, notes, or other evidence of indebtedness.

7. One such offering, the "Drake Oak Brook Offering," commenced on or about November 10, 2007. Through the Drake Oak Brook Offering, Shereshevsky and Byers sought to raise $14.5 million purportedly to acquire indirectly and to develop as a Wyndham property the Drake Oak Brook hotel, a full-service, business class hotel located in the Chicago suburb of Oak Brook, Illinois.

8 As of August 11, 2008, the Drake Oak Brook Offering had raised approximately $11.6 million.

2

9. The Drake Oak Brook Offering, like various others commenced by Shereshevsky and Byers, was a fraudulent investment scheme. Specifically, this offering and others were the subject of "over-raising" – a process through which Shereshevsky and Byers obtained proceeds intended for one entity and then used these funds to meet deficits in other entities.

10. On August 11, 2008, the Securities and Exchange Commission ("SEC") brought a civil action against Shereshevsky and Byers, as well as the Wextrust Entities (together with Shereshevsky and Byers, the "Wextrust Defendants").

11. The action alleged Shereshevsky and Byers had engaged in ongoing fraudulent securities offerings, and, acting through the Wextrust Entities, had raised at least $225 million from at least 1,196 investors worldwide. In addition, Byers and Shereshevsky have been indicted on criminal charges by a federal grand jury. Both the civil and criminal cases are pending before United States District Judge Denny Chin in the Southern District of New York.

12. The Wextrust Receivership was created by order of the United States District Court for the Southern District of New York on August 11, 2008. The court has appointed Timothy J. Coleman to act as the Receiver for the Wextrust group of companies. The Receiver is charged with managing the Wextrust companies and with taking other actions required by law and by the Court's orders.

13. Regions is both a secured and an unsecured creditor of various Wextrust affiliates. These particular affiliates (the "Regions Borrowers") collectively owe Regions more than $70 million.

14. The Regions Borrowers include several Wextrust affiliates, now controlled by the Receiver, that owned two hotels, two industrial buildings, two warehouses, 13 office buildings, and an office condominium development. The two hotel entities owe Regions roughly

$33 million, while the other seven entities that have title to the other 18 properties owe Regions an additional debt of approximately $38 million. Regions currently anticipates that it may end up with a deficiency on the two hotel loans that will exceed $10 million.

15. On May 1, 2009, the Receiver obtained Court approval to relinquish the two hotel properties, one of which was the Drake Oak Brook. Appropriate orders have been entered allowing action by Regions and removing the Receiver from any involvement with the hotels.

16. Since the relinquishment, Regions, at Wyndham's request and without any obligation to do so, has provided in excess of $500,000 in funding in support of operations, including funds to pay Wyndham's employees.

## THE MANAGEMENT AGREEMENT AND THE SDNA

17. On or about January 10, 2008, Drake Oak Brook Holdings, LLC ("Drake Oak Brook Holdings") purchased the Drake Oak Brook hotel.

18. To fund this acquisition, Drake Oak Brook Holdings obtained a loan from Regions in the amount of $16,660,550, as evidenced by a Promissory Note dated January 10, 2008 (filed herewith as Ex. 1).

19. On January 10, 2008, Drake Oak Brook Holdings and Wyndham Hotel Management, Inc. ("Wyndham"), entered into a hotel management agreement (filed herewith as Ex. 2) "for the management, maintenance and operation of" the Drake Oak Brook hotel.

20. In light of the management agreement, Regions made its loan to Drake Oak Brook Holdings on the condition that Drake Oak Brook Holdings and Wyndham execute and deliver a Subordination and Non-Disturbance Agreement (the "SDNA", filed herewith as Ex. 3).

## THE REGIONS-WYNDHAM SHUT-DOWN AGREEMENT

21. Because of precipitous declines in revenue, in the summer of 2009, it became necessary to shut down the Drake Oak Brook hotel.

22. In order to effectuate an orderly shut down of operations as of September 30, 2009, Wyndham needed an infusion of cash. Regions and Wyndham reached an agreement under which Regions would provide this infusion in exchange for steps to be taken by Wyndham (the Regions-Wyndham "Shut-Down Agreement"). (Correspondence evidencing the Regions-Wyndham Shut-Down Agreement is filed herewith as Ex. 4.)

23. Specifically, Regions agreed to provide $180,000 to assist in the funding of the hotel's operations through September 30, 2009. Regions also agreed to allow Wyndham to use for operations amounts consisting of between $20,000 and $30,000 in the hotel's Furnitures, Fixtures, and Equipment ("FF&E") account, which was part of Regions' collateral.

24. In exchange, Wyndham agreed to proceed to terminate the existing Management Agreement and the corresponding SDNA such that, on the date of the shut-down, the property would not be encumbered by any claims asserted by Wyndham with respect to these agreements.

25. Wyndham also agreed not to charge management fees through the date of the shutdown.

26. Regions and Wyndham reached agreement as to all material terms of the Shut-Down Agreement on or about August 7, 2009.

27. Regions then provided $180,000 to assist in funding hotel operations and to allow Wyndham to draw down moneys in the FF&E account. In providing these funds, Regions met its obligation under the Shut-Down Agreement.

28. Until October 5, 2009, Regions believed that Wyndham was proceeding to fulfill its obligations under the Shut-Down Agreement. Then, on that date, Wyndham suddenly advised Regions that it considered Regions' conduct to have violated Wyndham's rights under the SDNA.

29. Wyndham claimed that Regions had made representations that were either untrue or materially misleading, in an effort to persuade Wyndham to release certain rights under the SDNA. (Correspondence pertaining to Wyndham's allegations of misconduct are filed herewith as Ex. 5.)

30. Wyndham also asserted that a transfer of the loan in the amount of $16,660,500 to Crestmoor One, LLC, an affiliate of Regions, violated the SDNA.

31. Citing this purported misconduct, Wyndham advised it would not fulfill its obligations under the Shut-Down Agreement, including the termination of the SDNA and the Management Agreement, each of which poses significant difficulty to Regions in marketing and selling the Drake Oak Brook hotel.

32. Wyndham now takes the position that, by virtue of Drake Oak Brook Holdings' execution of an Assignment of Management Agreement dated January 10, 2008 (attached hereto as Ex. 6), Regions assumed the responsibilities of Drake Oak Brook Holdings under the terms of the Management Agreement, effective upon the closing of the original loan transaction. Accordingly, Wyndham asserts that Regions has obligations to Wyndham under the Assignment.

33. Wyndham continues in this posture today, despite Regions' having explained that it has not violated any of Wyndham's rights, made false or misleading representation, or engaged in any conduct violating the Shut-Down Agreement or otherwise excusing Wyndham's performance under it.

## COUNT ONE (BREACH OF CONTRACT)

34. Regions restates and incorporates the allegations set forth in paragraphs 1 through 33.

35. The Shut-Down Agreement is a valid, enforceable agreement.

36. In accordance with the Shut-Down Agreement, Regions bargained for and paid for the termination of both the SDNA and the Management Agreement and for a cooperative, well-managed, and organized transition of the hotel to Regions' oversight, including Wyndham's release from its ongoing management responsibilities.

37. Regions fully performed under the Shut-Down Agreement, after which Wyndham failed and refused to perform, without excuse or justification.

38. Wyndham's failures include refusing to allow Regions access to Wyndham's personnal to discuss transition issues.

39. All of Wyndham's failures and refusals have caused harm to Regions which continues to increase each day.

## COUNT TWO (UNJUST ENRICHMENT)

40. Regions restates and incorporates the allegations set forth in paragraphs 1 through 39.

41. Regions conduct described above has conferred benefits upon Wyndham.

42. Wyndham induced Regions to confer these benefits by promising consideration in exchange for them, but after appreciating the benefits Wyndham has refused to provide the bargained-for consideration.

43. Wyndham's acceptance of these benefits under the facts and circumstances here is inequitable.

## COUNT THREE (DECLARATORY JUDGMENT)

44. Regions restates and incorporates the allegations set forth in paragraphs 1 through 43.

45. Wyndham's position that, by virtue of Drake Oak Brook Holdings' execution of the Assignment of Management Agreement, Regions assumed the holding company's responsibilities under the Management Agreement is contrary to law and fact.

46. That position is wholly inconsistent with the Assignment's plain meaning and with the economic realities associated with commercial transactions undertaken in the hospitality sector.

47. As a matter of law, the assignment is one for security, not a commercial guarantee by Regions of Drake Oak Brook Holdings' obligations to Wyndham.

48. Based on the foregoing and all the facts and circumstances here, actual controversies of great immediacy and reality exist between Regions and Wyndham.

49. Regions is entitled to declaratory relief that (a) it has not assumed the responsibilities of Drake Oak Brook Holdings under the terms of the Management Agreement, and (b) the transfer of the loan in the amount of $16,660,500 to Crestmoor One, LLC, is not a violation of the SDNA.

## PRAYER FOR RELIEF

Whereas, Plaintiff Regions respectfully requests:

A. That the Court enter judgment in its favor for compensatory damages in an amount to be proven at trial.

B. That the Court enter declaratory relief in its favor as requested above; and

C. That the Court grant it such other relief as may be just and proper.

Respectfully submitted,

David E. Lemke (B.P.R. No. 13586)
Lea Carol Owen (B.P.R. No. 19531)
Michael Harmon (B.P.R. No. 27279)
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: david.lemke@wallerlaw.com
carol.owen@wallerlaw.com
michael.harmon@wallerlaw.com

*Counsel for Plaintiff Regions Bank*