**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **REGIONS BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 3:09-cv-01054** |
| **v.** | ) | |
| | ) | **JUDGE ALETA A. TRAUGER** |
| **WYNDHAM HOTEL MANAGEMENT, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO FORUM SELECTION CLAUSE OR IN THE ALTERNATIVE TO STAY PENDING ARBITRATION**

## TABLE OF CONTENTS

**Page**

**Relevant Factual Background** .......... 1

A. The forum selection clause requires that arbitration and litigation proceedings occur exclusively in Illinois .......... 1

B. The Hotel operations and indictment of the Owner's principals .......... 3

C. Regions Bank's concealment of material facts .......... 4

D. Pending Illinois proceedings involving the Hotel .......... 5

**Introduction** .......... 6

**I. This Action Should Be Dismissed Because It Was Filed In Contravention of a Mandatory Forum Selection Clause** .......... 7

**II. In the Alternative, This Matter Should Be Stayed Pending Arbitration** .......... 10

**Conclusion** .......... 14

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Book Depot Partnership v. American Book Co.*, 2005 WL 1513155 (E.D. Tenn. 2005) .......... 12

*Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483 (6th Cir.2002) .......... 10

*Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc.*, 680 A.2d 618, 146 N.J. 176 (N.J. 1996) .......... 8

*Langley v. Prudential Mortgage Capital, Co., LLC*, 546 F.3d 365 (6th Cir. 2008) .......... 8

*Lyons v. Stovall*, 188 F.3d 327 (6th Cir.1999) .......... 5

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .......... 8

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) .......... 12, 13

*NCR Corp. v. Korala Associates, Ltd.*, 512 F.3d 807 (6th Cir.2008) .......... 13

*New England Health Care Employees Pension Fund v. Ernst & Young LLP*, 336 F.3d 495 (6th Cir.2003) .......... 5

*Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718 (6th Cir. 2006) .......... 8

*Preston v. Ferrer*, 552 U.S. 346 (2008) .......... 11, 12

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) .......... 10

*Scotty's Contracting and Stone, Inc. v. United States of America*, 326 F.3d 785 (6th Cir.2003) .......... 5

*Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir.1999) .......... 8

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) .......... 10

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000) .......... 11

*Telos Holdings, Inc. v. Cascade*, 2009 WL 3415157 (M.D. Tenn. October 19, 2009) .......... 10

## FEDERAL STATUTES

Federal Arbitration Act, 9 U.S.C. § 3 ........................................................................................ 1

## FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b) of the Federal Rules of Civil Procedure ................................................................ 1, 12

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Wyndham Hotel Management, Inc. ("Wyndham") submits this memorandum in support of its motion to dismiss the Complaint filed by Regions Bank ("Regions Bank" or "Plaintiff"), based on the contractual requirement that any "dispute, claim or issue" arising under a series of agreements be brought exclusively in Illinois. In the alternative, Wyndham seeks an order staying this action in accordance with the Federal Arbitration Act, 9 U.S.C. § 3.

## Relevant Factual Background

This action arises out of the demise of a storied Illinois hotel, known as the Drake Oak Brook, a 160-room facility located 20 miles west of Chicago (the "Hotel"). Funded by a $16 million loan from Regions Bank, a limited liability company calling itself Drake Oak Brook Holdings (the "Owner") bought the historic Hotel in January 2008. (Complaint ¶ 18.) The Owner then entered into a Hotel Management Agreement with Wyndham effective January 10, 2008 (the "Management Agreement"), obtaining a license to use the Wyndham name on the property, and arranging for Wyndham to handle the operations of the Hotel for a 25-year term, including renewal rights. (Complaint ¶19, citing Ex. 2, Management Agreement.) That Management Agreement is still in effect. (Complaint, Ex. 5, October 29, 2009 Letter, p. 3.)

### A. The forum selection clause requires that arbitration and litigation proceedings occur exclusively in Illinois.

Among other provisions, the Management Agreement provides that "any dispute, claim or issue arising under this Agreement" must be resolved, if mandatory mediation fails, by a binding arbitration in Illinois, defined to be the "Situs" of the Hotel. (Complaint, Ex. 2, Par. 14.2.) The Management Agreement further specifies that the venue of "any judicial proceedings" is Illinois, and for that purpose, the parties have "irrevocably" submitted to "the

exclusive jurisdiction of the federal or state courts located at the Situs." (Complaint, Ex. 2, Par. 14.4.) The Management Agreement notes that it was "made and entered into for the sole protection and benefit of [Wyndham] and Owner "and their respective successors and assigns . . . ." (Complaint, Ex. 2, Par. 15.10.)

In addition to executing the Management Agreement, Wyndham entered into a Subordination and Non-Disturbance Agreement with the Owner and its lender Regions Bank, also effective January 10, 2008 (the "SNDA"). (Complaint ¶20 citing Ex. 3, SNDA) Under the SNDA, Regions Bank committed, among other things, that neither the lender nor any transferee would disturb or otherwise interfere with Wyndham's possession and operation of the Hotel for the remainder of the term of the Management Agreement. (Complaint, Ex. 3, Par. 4.) The SNDA referenced the terms of the Management Agreement 27 times in its 5 pages of text.

Apart from the Management Agreement and SNDA, one additional document became effective on January 10, 2008. Without Wyndham's knowledge, Regions Bank required and took an "absolute and present assignment" of the Management Agreement from the Owner (the "Assignment"). (Complaint ¶32, Ex. 6, Assignment, §§ C, E, 1, 4.) That Assignment incorporated the Management Agreement by reference, and provided, in relevant part,

> C. [Owner] has entered into a Management Agreement with Wyndham Hotels ("Manager") dated as of January 10, 2008 (**the "Management Agreement"**) for the day-to-day management of the Hotel, a true and correct copy of which **is attached hereto as Exhibit A and incorporated herein.**
>
> * * *
>
> E. As a condition precedent to the making of the Loan, **Lender required that [Owner] assign to Lender its rights and interest in any management agreement** entered into by [Owner] with the approval of the Lender. The parties wish to establish the terms and conditions of such assignment.

* * *

> 1. [Owner] does **grant, assign, transfer and set over unto Lender**, and grant to Lender a security interest in and to, **all of [Owner's] right, title and interest in and to the Management Agreement**, as described above, for the performance of day-to-day management and leasing of the Hotel.
>
> * * *
>
> 4. Assignor agrees that **this Assignment shall constitute an absolute and present assignment** and security interest provided that Lender shall have no right under this Assignment to enforce the provisions of the Management Agreement until Assignor is in default under ...[any] agreement related to the Hotel....

(Complaint, Ex. 6, §§ C, E, 1, 4.) (emphasis supplied)

**B. The Hotel operations and indictment of the Owner's principals.**

Beginning in January 2008, Wyndham managed the Hotel on behalf of the Owner, booking guests, weddings and other events, collecting revenues and paying expenses. As the Complaint alleges, the principals of the Owner were then indicted for their alleged roles in an international fraud (involving real estate, diamond mines, and defrauded investors) and currently await trial in the United States District Court for the Southern District of New York before Judge Chin. (Complaint ¶ 11.) Judge Chin appointed a Receiver for the assets held by the Owner and myriad affiliates, including this Hotel. (Complaint ¶ 12.) On May 1, 2009 the Receiver abandoned all interest in the Hotel, with the court's permission. (Complaint ¶ 15.) The Hotel remained open and operating both before and after the Receiver disclaimed any interest in it, as Wyndham continued to manage the property in accordance with the Management Agreement. The Owner became increasingly delinquent, failing to pay management fees due to Wyndham, as well as other debts. The Owner therefore defaulted on its obligations both to Wyndham and to Regions Bank.

**C. Regions Bank's concealment of material facts.**

In 2009, Wyndham asked Regions Bank for a series of cash infusions for the property, in order to make payments due to employees, utilities, repair services, other vendors, and to Wyndham itself for overdue management fees. Regions Bank provided some limited funding, but advised Wyndham in July that Regions Bank, in its role as secured lender, had concluded that it would no longer continue funding operations of the Hotel. Regions Bank consistently portrayed itself simply as the "Lender," without revealing that it had also become the legal Assignee of the Owner's obligations. (Complaint, Ex. 5, October 29, 2009 Letter.)

Regions Bank then quietly transferred its interest in the Hotel to a newly-created entity called Crestmoor One LLC ("Crestmoor"), ignoring the requirement of the SNDA that any such transfer be disclosed to Wyndham in advance. (*See, e.g.*, Complaint Ex. 3, Par. 5(c); Complaint Ex. 5, October 12, 2009 Letter and October 29, 2009 Letter.) In August 2009, still without disclosing that Regions Bank had taken an absolute assignment of the Owner's interest in the Management Agreement, Regions Bank advised Wyndham that it was bringing a foreclosure action and was requiring Wyndham to shut down the Hotel. (Complaint Ex. 5, October 12, 2009 Letter and October 29, 2009 Letter.) In order to protect the experiences of the guests who had booked rooms, weddings, anniversaries and other events at the Hotel, in its role as manager and agent Wyndham sought and obtained an additional $180,000 in funding from Regions Bank to permit the operation of the Hotel through September 30, 2009. (Complaint Ex. 5, October 5, 2009 Letter and October 29, 2009 Letter.) That date was ultimately extended to October 30, 2009, to accommodate additional weddings and events. (Complaint Ex. 5, October 29, 2009 Letter.) None of the funds received from Regions Bank in August or September went to

Wyndham's past due or future management fees, which total in excess of $1.9 million today. (Complaint Ex. 5, October 5, 2009 Letter.)

At the time Regions Bank provided these additional funds, it asked Wyndham to modify the Management Agreement and SNDA, effectively to terminate Wyndham's rights under both agreements, including Wyndham's entitlement to $1.9 million in fees. As part of its apparent strategy to induce Wyndham into relinquishing such rights, Regions Bank continued to conceal material facts from Wyndham, including the fact that Regions Bank had taken an "absolute and present assignment" of the Management Agreement, and had transferred its interest in the Hotel to Crestmoor. While Wyndham had originally agreed orally to work with Regions Bank on language to address Regions Bank's requests, Wyndham ultimately learned of the undisclosed Assignment, and no amendment to the Management Agreement or the SNDA was ever signed. (Complaint Ex. 5, October 12, 2009 Letter and October 29, 2009 Letter.)

**D. Pending Illinois proceedings involving the Hotel.**

On September 24, 2009, Regions Bank's affiliate Crestmoor filed a foreclosure action in the Circuit Court for DuPage County, Case No. 09 CH 004339, and failed to name or to serve Wyndham, despite Wyndham's 25-year right to manage the property under the unmodified SNDA and the Management Agreement.[1] (*See* Complaint for Foreclosure, Case No. 2009 CH 004339, attached hereto as Exhibit A.) Crestmoor then filed with the Circuit Court a motion to become Mortgagee in Possession, and provided counsel for Wyndham a copy after Wyndham

---

[1] This Court may take judicial notice of documents submitted as part of proceedings in a different case in a court of record. *Scotty's Contracting and Stone, Inc. v. United States of America*, 326 F.3d 785, 789 n. 1 (6th Cir.2003); *Lyons v. Stovall*, 188 F.3d 327, 332 n. 2 (6th Cir.1999). Moreover, finding and considering a fact by judicial notice does not convert a motion to dismiss for failure to state a claim into a motion for summary judgment. *New England Health Care Employees Pension Fund v. Ernst & Young LLP*, 336 F.3d 495, 501 (6th Cir.2003) ("A court that is ruling on a 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or otherwise appropriate for the taking of judicial notice.")

learned of the foreclosure proceeding and requested one. (*See* October 6, 2009 Transmittal Email Enclosing Crestmoor's Motion for Order Placing Plaintiff in Possession of Mortgaged Premises, attached hereto as Exhibit B.) In November 2009, Crestmoor substituted a motion for appointment of a receiver, which the Circuit Court granted. (*See* November 3, 2009 Order Appointing Receiver, attached hereto as Exhibit C.)

In accordance with the ADR provisions set forth in Paragraph 14.1 of the Management Agreement, Wyndham has provided notice to Regions Bank that a dispute exists, and has contacted the ADR Provider to schedule a mediation conference. (*See* November 24, 2009 Notice attached hereto as Exhibit D.) If mediation fails, the Management Agreement requires that binding arbitration occur, "administered at the [Illinois] Situs by the ADR Provider under its then-current rules." (Complaint, Ex. 2, par. 14.1.) The applicable JAMS rules provide, in relevant part,

> **Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement** under which Arbitration is sought, **and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.** The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(c), effective July 15, 2009; available at *http://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_comprehensive_arbitration_rules-2009.pdf*.) (emphasis supplied)

## Introduction

Wyndham respectfully moves that the action before this Court be dismissed due to the existence of a forum selection clause that specifies Illinois as the exclusive venue for judicial proceedings, as well for binding arbitration. In the alternative, Wyndham asks that the Court stay this action pending the contractually-required mediation and arbitration.

In Count I of its three-count Complaint, Regions Bank claims that it bargained and paid for a modification and termination of the Management Agreement and the SNDA in a series of discussions it now has decided to call the "Shut Down Agreement." (Complaint, ¶¶ 22, 36.) Regions Bank further alleges, in Count II, that Wyndham accepted benefits, yet unjustly refused to terminate the Management Agreement and the SNDA in exchange for the funds needed to keep the Hotel open for its last few weeks (Complaint, ¶ 42.) In its third and final count, Regions Bank seeks a determination that, under the "plain meaning" of the Assignment it took from the Owner, it did not assume the responsibilities of the Owner under the Management Agreement. (Complaint, ¶¶ 45-47.) Regions Bank further seeks a declaration that its quiet transfer of the loan to Crestmoor did not violate the SNDA (Complaint, ¶ 49.).

Each Count of the Regions Bank Complaint therefore presents "claims, issues and disputes" that arise under the Management Agreement, the SNDA, and the Assignment that expressly incorporated the terms of the Management Agreement. Those disputes are subject to an unambiguous and enforceable forum selection clause providing for exclusive jurisdiction in Illinois, and are also subject to requirements of mediation and binding arbitration in Illinois. Under Rule 12(b), Wyndham therefore seeks the dismissal of the Complaint, based on the forum selection clause. In the alternative, if the Court does not dismiss this action, Wyndham respectfully seeks a stay pending arbitration, in accordance with Section 3 of the Federal Arbitration Act.

## I. This Action Should Be Dismissed Because It Was Filed In Contravention of a Mandatory Forum Selection Clause.

Regions Bank has initiated the action before this Court in complete disregard of a valid forum selection clause. The Management Agreement, incorporated by reference into the Assignment and referenced 27 times in the SNDA, provides explicitly that the venue of "any

judicial proceedings" is Illinois, and for that purpose, the parties "irrevocably" have submitted to "the exclusive jurisdiction of the federal or state courts located at the Situs." (Complaint Ex. 2, Par. 14.4; Complaint Ex. 6, Par. B, incorporating terms of Management Agreement by reference.) The Management Agreement was "made and entered into for the sole protection and benefit of [Wyndham] and Owner "and their respective successors and **assigns**..." (Complaint Ex. 2, Par. 15.10.) (emphasis supplied) The mandatory mediation and arbitration of disputes is also expressly venued in Illinois. (Complaint Ex. 2, Par. 14.2.)

The contractual selection of Illinois as the exclusive forum renders venue improper in Tennessee. Accordingly, Rule 12(b)(6) empowers the Court to dismiss the action. *Langley v. Prudential Mortgage Capital, Co., LLC,* 546 F.3d 365, 369 (6th Cir. 2008) (when a party seeks to enforce a forum selection clause through a properly brought motion to dismiss, the district court may enforce the forum selection clause through dismissal under Rule 12(b)(6)); *Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 371, 374-76 (6th Cir.1999) (affirming the district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b), to enforce a forum selection clause).[2]

As the Supreme Court explained more than 30 years ago in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), forum selection clauses are *prima facie* valid. Accordingly, a forum selection clause in a commercial contract is presumed to be controlling absent a "strong showing" that it should be set aside. *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 721 (6th Cir. 2006)(*citing M/S Bremen*, 407 U.S. at 15). In evaluating a challenge to a

[2]The 6th Circuit has yet to directly address whether, in a diversity case, the validity of a forum selection clause is determined by reference to the law of the jurisdiction whose law governs the dispute, or to federal common law. This distinction is not dispositive here. New Jersey law governs claims arising under the Management Agreement (Complaint Ex. 2, §15.19). New Jersey applies the same standard for enforceability of contractual forum selection clauses as does federal common law. *Kubis & Perszyk Assoc., Inc. v. Sun Microsystems, Inc.*, 680 A.2d 618, 624, 146 N.J. 176, 188 (N.J. 1996) (adopting *The*

forum selection clause, the federal courts examine "(1) the commercial nature of the contract; (2) the absence of fraud or overreaching; and (3) whether enforcement of the forum selection clause would otherwise be unreasonable or unjust." *Id.* at 721.

None of those factors justify a rejection of the forum selection clause before this Court. The forum selection provisions appears in what is clearly a commercial agreement, for the licensing of the Wyndham trade name and trademarks, and the management of a Hotel. That agreement was incorporated by reference into an Assignment, which Regions Bank "required" the Owner to sign (Complaint Ex. 6, Par. E), in order to obtain a commercial real estate loan from the bank. Finally, Regions Bank can make no showing that it would be "unreasonable or unjust" for it to arbitrate or litigate in Illinois. As the Supreme Court has noted, such a showing would require proof that litigation in Illinois "will be so gravely difficult and inconvenient that [the party] will for all practical purposes be deprived of [its] day in court." *M/S Bremen*, 407 U.S. at 18. Certainly there is no basis for such a conclusion here, where Regions Bank chose to finance the purchase of an Illinois hotel, took a mortgage on the property, has retained capable Illinois counsel to represent Regions Bank's sole-purpose affiliate Crestmoor in Illinois foreclosure proceedings, and has every ability to use electronic filing to communicate with both the ADR Provider (JAMS) and the United States District Court for the Northern District of Illinois if need be.

Regions Bank also cannot avoid application of the forum selection by portraying its claims as unrelated to the Management Agreement. Each Count of the Regions Bank Complaint raises "claims, issues and disputes" arising under the Management Agreement and the Assignment that expressly incorporates its terms. The gravamen of the Complaint is Regions

---

*Bremen*, 407 U.S. 1 (1972) as the prevailing view on the enforceability of forum-selection clauses).

Bank's request for a determination regarding the extent of its liability under the Management Agreement. Although Counts I and II profess to seek enforcement of a separate "Shut Down" agreement, named for the purpose of the Complaint, a close examination of their allegations demonstrates that Counts I and II are nothing more than an attempt by Regions Bank to modify the written terms of both the Management Agreement and the SNDA. In Count III, Regions Bank admits that it seeks a declaration that it did not assume responsibilities of the Owner, by entering into an Assignment. That Assignment expressly incorporates the terms of the Management Agreement, and therefore itself mandates that judicial proceedings occur in Illinois. Enforcing the forum selection clause will protect the legitimate expectations of the parties. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

**II. In the Alternative, This Matter Should Be Stayed Pending Arbitration.**

As this Court noted in *Telos Holdings, Inc. v. Cascade*, 2009 WL 3415157 (M.D. Tenn. October 19, 2009),

> Under Section 3 of the Federal Arbitration Act (FAA), when an action is brought in federal court "upon any issue referable to arbitration under agreement in writing for such arbitration," the court must "stay the ... action pending arbitration once it is satisfied that the issue is arbitrable under the agreement.

*Id.* at *3, citing *Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 488 (6th Cir.2002) and *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). In accordance with L.R. 7.01(5), a complete text of the decision in *Telos Holdings* is attached hereto as Exhibit E.

Given the strong federal policy in favor of arbitration, courts traditionally examine the language of the contract to determine 1) whether the parties agreed to arbitrate, and 2) the scope of arbitrable issues covered by that agreement. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.

2000). As this Court has noted, any doubts regarding the scope of arbitrable issues "should be resolved in favor of arbitration." *Telos Holdings* at *3.

In the current case before this Court, the arbitration agreement presents an even narrower issue for examination, because the arbitration clause incorporates by reference the rules of the ADR Provider, JAMS. Par. 14.2 of the Management Agreement provides, in relevant part,

> If any Dispute remains between the Parties after the mediation is complete, the Parties must submit the Dispute to final and binding arbitration (without appeal or review) administered at the [Illinois] Situs by the ADR Provider [JAMS] **under its then-current rules** .... (Complaint Ex. 2, Par. 14.2.) (emphasis supplied).

The current JAMS rules reserve, for decision by the arbitrator, any disputes regarding the formation of the contract, and who the proper parties are for the arbitration proceeding:

> **Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement** under which Arbitration is sought, **and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.** The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter. (JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(c).) (emphasis supplied)

Accordingly, the arbitration clause before the Court presents an issue that the United States Supreme Court addressed last year in *Preston v. Ferrer*, 128 S. Ct. 978 (2008). Preston involved a dispute between the television personality known as "Judge Alex" and his lawyer, and required the Supreme Court to determine who would decide whether the lawyer was an unauthorized regulated agent or an unregulated personal advisor to the actor. The contract provided that any dispute "should be arbitrated in accordance with the [AAA] rules." *Id*. at 979. The Supreme Court analyzed whether the contract's incorporation of California law operated to take jurisdiction away from the AAA and assign it to the California Labor Commissioner.

Justice Ginsberg, writing for 8 members of the Supreme Court, noted that prior decisions in the case had not addressed "the import of the contract's incorporation by reference of privately promulgated arbitration rules." *Id.* at 988. The opinion continued,

> Preston and Ferrer's contract, as noted, provides for arbitration in accordance with the AAA rules ....One of those rules states that '[t]he arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part....' The incorporation of the AAA rules, and in particular Rule 7(b), weighs against inferring from the choice of law clause an understanding shared by Ferrer and Preston that their disputes would be heard, in the first instance, by the Labor Commissioner.

*Id*. at 989. Following *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995), then, in *Preston* the Supreme Court enforced the FAA and the AAA rule, reversing the California state court decision enjoining arbitration.

In the case before this Court, the arbitration clause provides that it is for the arbitrator to determine, in the first instance, the formation and scope of the arbitration agreement, and who the proper parties are. By agreeing to arbitrate in accordance with JAMS' Rules, and thus incorporating Rule 11(c), the parties "clearly and unmistakably" agreed to arbitrate these jurisdictional issues. *See Book Depot Partnership v. American Book Co.*, 2005 WL 1513155, at *3 (E.D. Tenn. 2005) (noting that the majority of courts have held that when an agreement "incorporates rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"). In accordance with L.R. 7.01(5) a complete text of the decision in *Book Depot Partnership* is attached hereto as Exhibit F. Accordingly, Wyndham respectfully asks the Court to exercise its power to stay this action pending arbitration.

Even if the arbitration agreement had not incorporated this clause regarding the ADR Provider's jurisdiction, a stay nonetheless would be the proper treatment for the Regions Bank

Complaint.  As this Court explained in *Telos Holdings*, an examination of whether a dispute is arbitrable "does not reach the merits of the parties' claims."  *Id.* at *3, citing *Burden*, 267 F.3d at 487.  In deciding arbitrability, "the cornerstone" of the analysis instead "rests upon whether [the court] can resolve the instant case without reference to the agreement containing the arbitration clause."  *NCR Corp. v. Korala Associates, Ltd.*, 512 F.3d 807, 814 (6th Cir.2008).

Applying that approach to the facts before this Court, it is plain that the Regions Bank claims cannot be resolved without referring to the Management Agreement, or to the Assignment that incorporates the terms of the Management Agreement.  In Counts I and II of its Complaint, Regions Bank complains that Wyndham breached an obligation to terminate the Management Agreement and the accompanying SNDA pledge not to disturb it.  Although Regions Bank asserts that Wyndham breached a "Shut Down Agreement," its allegations make clear that the newly-named "Shut Down Agreement" was an alleged promise to modify and terminate the Management Agreement and the SNDA.  In order to be effective, any such modification could not have been fraudulently induced, and would need to have been made in writing, in compliance with certain notice requirements specified in the Management Agreement. (Cf. Complaint ¶¶ 22-29, 35-36, with Complaint Ex. 2, par. 15.4, 15.11, 15.18 and Complaint Ex. 5, October 29, 2009 Letter.)  In Count III, Regions Bank expressly seeks a determination that it did not assume the responsibilities of the Owner under the terms of the Management Agreement, by virtue of the Assignment that incorporated its terms.  (Complaint, ¶¶ 44-49.)

Because this action cannot be resolved without reference to the agreements that incorporate the arbitration clause, the issues in dispute are properly within the scope of the contractual arbitration requirements.

## Conclusion

The action before this Court is governed by contractual forum selection clauses that specify Illinois as the exclusive venue for judicial and arbitration proceedings. Furthermore, the underlying Management Agreement, and therefore the Assignment that incorporates it, requires that the parties engage in mandatory mediation and arbitration of disputes. Accordingly, Wyndham respectfully prays that this Court dismiss the pending action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, or in the alternative stay all proceedings pending mediation.

Dated: November 30, 2009

Respectfully submitted,

HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.

s/ Alexandra Coulter Cross
Alexandra Coulter Cross (BPR #017726)
Jeffrey J. Miller (BPR #017122 )
315 Deaderick Street, Suite 1800
Nashville, Tennessee 37238
(615) 256-0500 - Telephone
(615) 251-1058 - Facsimile
acc or jjm@h3gm.com

and

Paula J. Morency (IL Bar #3127506)
Ayad Paul Jacob (IL Bar #6280274)
Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606-6473
(312) 258-5549 - Telephone
(312) 258-5600 – Facsimile
pmorency@schiffhardin.com
ajacob@schiffhardin.com

*Attorneys for Wyndham Hotel Management, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this day, filed electronically via CM/ECF a true copy of the within and foregoing Memorandum in Support of Defendant's Motion to Dismiss Pursuant to Forum Selection Clause or in the Alternative to Stay Pending Arbitration, with notice of same being electronically served by the court, addressed to the following:

David E. Lemke
Lea Carol Owen
Michael Harmon
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Email: david.lemke@wallerlaw.com
carol.owen@wallerlaw.com
Michael.harmon@wallerlaw.com

s/ Alexandra Coulter Cross
Alexandra Coulter Cross

424204-1