**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **Regions Bank,** | ) | |
| | ) | |
| | ) | **Oral Argument Requested** |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **Wyndham Hotel Management, Inc.,** | ) | **Case No.  3:09-cv-01054** |
| | ) | |
| | ) | **Hon. Aleta A. Trauger** |
| **Defendant.** | ) | **Magistrate Judge John S. Bryant** |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS PURSUANT TO FORUM SELECTION CLAUSE OR IN THE**
<u>**ALTERNATIVE TO STAY PENDING ARBITRATION**</u>

January 6, 2010

Counsel for Defendant Wyndham Hotel Management, Inc.
Alexandra Coulter Cross (BPR #017726)
Jeffrey J. Miller (BPR #017122)
Harwell Howard Hyne Gabbert & Manner, P.C.
315 Deaderick Street, Suite 1800
Nashville, TN 37238
(615) 256-0500
Acc or jjm@h3gm.com

Paula J. Morency (IL Bar No. 3127506)
Ayad Paul Jacob (IL Bar No. 6280274)
Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606-6473
(312) 258-5549
pmorency@schiffhardin.com
ajacob@schiffhardin.com

# TABLE OF CONTENTS

**Page**

LEGAL DISCUSSION ................................................................................................................. 2

I.  **Regions' Claims Should be Dismissed Because They Arise Under the
    Management Agreement and the Assignment that Expressly Incorporates Its
    Terms, Not Under A Separate Oral Agreement** ....................................................... 2

    A.  No Separate Oral "Shut-Down Agreement" Exists – or Could Exist .................. 3

    B.  Regions' Claims Cannot Be Resolved Without Reference to the Hotel
        Management Agreement and the Assignment that Incorporated Its Terms. ......... 5

II.  **As Assignee, Regions is Bound by the Hotel Management Agreement's
     Forum Selection Clause and Binding Arbitration Provision.** ................................... 7

III.  **Contrary to Regions Bank's Representation, Courts Routinely Enforce
      Forum Selection Clauses and Binding Arbitration Provisions Against
      Assignees** .................................................................................................................. 11

IV.  **Court is Not "Ceding" Any Duty By Enforcing Contractual Agreement to
     Permit Arbitrator to Decide Issue of Arbitrability** ................................................. 12

V.  **Events since the filing of this Motion to Dismiss justify a Colorado River
    abstention.** ................................................................................................................. 14

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Actega Kelstar, Inc. v. Musselwhite*,
   2009 WL 1794793 (D.N.J. Jan. 22, 2009) ........................................ 12

*Aetna Cas. & Sur. Co. v. Tennessee Farmers Mut. Ins. Co.*,
   867 S.W.2d 321 (Tenn. Ct. App. 1993) ............................................. 8

*Arthur Andersen LLP v. Carlisle*,
   __ U.S. __, 129 S.Ct. 1896 (March 3, 2009) ..................................... 11

*AtlasJet v. Eads Aeroframe Services, LLC*, No. 07-212, 2009 WL 436420
   (S.D.N.Y. Feb. 17, 2009) .................................................................. 11

*Binswanger Southern (N.C.), Inc. v. Textron, Inc.*,
   860 S.W.2d 862 (Tenn. Ct. App. 1993) ............................................. 8

*Book Depot P'ship v. Am. Book Co.*,
   No. 05-163, 2005 WL 1513155 (E.D. Tenn. June 24, 2005) ............... 13

*Canaan Enterprises, Inc. v. Mobile Container Service, Inc.*,
   No. 06-3254, 2007 WL 752266 (D.S.C. March 7, 2007) .................... 11

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976) ......................................................................... 15

*Comedy Club, Inc. v. Improv W. Assoc.*,
   553 F.3d 1277, 1287 (9th Cir. 2009) ................................................ 12

*Crouch v. Guardian Angel Nursing, Inc.*,
   No. 07-00541, 2009 WL 3738095
   (M.D. Tenn. Nov. 4, 2009) ................................................................. 6

*Hataway, et al v. McKinley*,
   830 S.W.2d 53, 57-58 (Tenn.1992) .................................................... 5

*Iron Workers of Western Pa. Pension Plan v. Caremark RX, Inc.*,
   No. 06-1097, 2007 WL 60927 (M.D. Tenn. January 5, 2007) ........ 15, 16

*Jackson v. Moskovitz Agency, Inc.*,
   672 S.W.2d 400  (Tenn. 1984) ........................................................... 8

*NCR Corp. v. Korala Associates, Ltd.*,
   512 F.3d 807  (6th Cir. 2008) ............................................................. 7

*Pacific East. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946 (Tenn. Ct. App.
   1995) .................................................................................................. 8

*Preston v.* Ferrer,
   552 U.S. 346 (2008) ......................................................................... 13

*Systran Financial Services Corp. v. Giant Cement Holding, Inc.*,
   252 F.Supp.2d 500 (N.D. Ohio 2003) ............................................... 12

*T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*,
   93 S.W. 3d 861 (Tenn. Ct. App. 2002) ............................................. 13

## STATE STATUTES

740 ILCS 80/2 .......................................................................................... 5

Case 3:09-cv-01054   Document 23   Filed 01/06/10   Page 3 of 21 PageID #: 449

In its Rule 12(b) motion (the "Motion"), Wyndham Hotel Management, Inc. ("Wyndham") moved for dismissal of the Complaint filed by Regions Bank ("Regions"), based on a contractual forum selection clause contained in a Hotel Management Agreement (the "Management Agreement") originally executed by Wyndham and Drake Oak Brook Holdings, Regions' predecessor in interest. As detailed in Wyndham's supporting memorandum, Regions took an absolute assignment of the Management Agreement (the "Assignment"). As assignee, Regions is bound by the dispute resolution provisions set forth in the Management Agreement, and incorporated by reference into the Assignment.

Under the Management Agreement, "any dispute, claim or issue" arising under the agreement must be resolved, if mandatory mediation fails, by binding arbitration in Illinois. The Management Agreement further specified that Illinois is the exclusive venue for "any judicial proceedings," as well as for any arbitration proceedings, and confirmed that the parties "irrevocably" submit to the exclusive jurisdiction of the Illinois federal and state courts for that purpose.

In its Response, Regions advances two arguments in opposition to Wyndham's Motion. First, Regions claims that it is exempt from the Management Agreement's forum selection, mediation, and binding arbitration provisions because its claims are brought under a separate oral "Shut-Down Agreement," whereby Wyndham agreed to terminate its rights under the Management Agreement. Second, Regions claims that it is not bound by the dispute resolution provisions set forth in the Management Agreement because it did not sign that agreement. Both arguments lack merit.

No separate oral "Shut-Down Agreement" existed – or could have been enforceable by Regions. The oral discussions that Regions claims to have comprised the "Shut-Down

Agreement" were nothing more than an agreement to negotiate the release of the hotel property from encumbrances. The exhibits that Regions submitted as part of its Complaint reflect that the agreement to negotiate never resulted in a written agreement. The exhibits confirm that the negotiations instead were terminated, after Wyndham learned that Regions had concealed material facts concerning the assignment of the Management Agreement. Finally, any termination or other modification of the encumbering Management Agreement could only have been effective if it had been reduced to a signed writing, both under the terms of the Management Agreement and under the applicable statute of frauds.

Regions fares no better in its contention that, as a non-signatory, it is exempt from the dispute resolution provisions of the Management Agreement. Regions took an absolute Assignment that expressly incorporated the Management Agreement, and bound Regions to fulfill the "obligations or duties" of the Owner in the circumstances that have now unfolded – the Owner's default and Regions' resulting notices of intent to take possession of the hotel property. As assignee, Regions is bound by the dispute resolution provisions set forth in the Management Agreement, including the requirement, if mediation fails, to submit any dispute arising under the Agreement to binding arbitration in Illinois.

## LEGAL DISCUSSION

I. **Regions' Claims Should be Dismissed Because They Arise Under the Management Agreement and the Assignment that Expressly Incorporates Its Terms, Not Under A Separate Oral Agreement**

Regions argues that its claims should escape dismissal because they seek enforcement of a separate "oral contract" to "terminate" the Management Agreement and the SNDA, and therefore are unrelated to the Management Agreement. (Response at 2.) However, Regions' contentions fail for three reasons: 1) the alleged oral agreement was insufficiently definite to be

enforceable; 2) even the common ground that the parties identified in their agreement to negotiate was the result of Regions' attempted fraud in the inducement; and 3) the termination of the Management Agreement could not have been achieved without a writing. Accordingly, Regions cannot avoid the binding effect of the written venue and dispute resolution provisions that it undertook as the Owner's Assignee.

### A. No Separate Oral "Shut-Down Agreement" Exists – or Could Exist

The exhibits that Regions has placed before the Court in its Complaint reflect that no separate oral "Shut-Down Agreement" exists -- or could enforceably exist. Instead, the phrase "Shut Down Agreement" is a term Regions coined solely for its initial pleading in this case, to avoid acknowledging that there was no enforceable agreement to terminate or otherwise amend the Management Agreement or the related Subordination and Non-Disturbance Agreement (the "SNDA").

As Exhibit 4 to the Complaint reflects, before Wyndham learned of Regions' attempted fraud in the inducement, the parties had agreed only to work on language that would release the property from encumbrances. (*See* Complaint, Ex. 4, August 7, 2009 email from Lynn Feldman to John Rowland) ("... Wyndham will work with you on language that will release the property from the encumbrances set forth in the SDNA and will negotiate a reasonable set of releases ...") Moreover, this agreement to negotiate preceded the last minute disclosure of the Assignment taken by Regions and the obligations Regions thereby assumed. As detailed in the Answer filed by Wyndham in the foreclosure action pending in DuPage County, Illinois (attached hereto as Exhibit G)[1], Regions had attempted over many months to induce Wyndham into relinquishing its

---

[1] As set forth in Wyndham's opening brief, this Court may take judicial notice of documents submitted as part of proceedings in a different case in a court of record. (*See* Wyndham Opening Brief at 5, n.1 (and citations therein).)

contractual rights under the Management Agreement and the SDNA, without disclosing the existence of the Assignment. Once Wyndham learned of the sweeping terms of the Assignment, it terminated discussions with Regions. The parties never prepared or executed any written "Shut-Down Agreement." The alleged "Shut-Down Agreement" was therefore only an agreement to negotiate, lacked terms sufficiently definite to be enforceable, and resulted from an effort to negotiate away Wyndham's interest in the hotel property without disclosing to Wyndham the scope of the Assignment.

Finally, the alleged "Shut-Down Agreement" fails as a matter of law, because it does not meet the writing requirements reflected in the Management Agreement that plaintiff has submitted to this Court, let alone the applicable statute of frauds. Under the Management Agreement, only a "written document duly executed" by the parties would have been sufficient to modify or amend the agreement. (Complaint, Ex. 2, par. 15.18) Absent an executed amendment, no enforceable early termination could have occurred. Section 15.4 provides, in relevant part,

> IRREVOCABILITY OF CONTRACT.
>
> ...THE PARTIES HEREBY UNCONDITIONALY AND IRREVOCABLY WAIVE AND DISCLAIM ALL RIGHTS TO TERMINATE THIS AGREEMENT AT LAW OR IN EQUITY, EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT.

(Complaint, Ex. 2, par. 15.14.) (emphasis in original) This provision could only have been modified in writing. Section 15.18 provides, in relevant part,

> Entire Agreement.
>
> ...This Agreement can be modified or amended only by a written document duly executed by the Parties or their duly appointed representatives.

4

(Complaint, Ex. 2, par. 15.18.)  The alleged oral "Shut-Down Agreement" would have been ineffective to eliminate the irrevocability provision and thus to terminate the Management Agreement.

Any alleged oral agreement to terminate Wyndham's rights under the Management Agreement or the SDNA would also have been unenforceable as a matter of law.  The "Shut-Down Agreement," as a contract concerning an interest in real estate, would have had to satisfy the statute of frauds, requiring a writing signed by the party against whom enforcement is sought. 740 ILCS 80/2.[2]  The alleged oral "Shut-Down Agreement" failed to meet this requirement as well.

### B. Regions' Claims Cannot Be Resolved Without Reference to the Hotel Management Agreement and the Assignment that Incorporated Its Terms.

Regions maintains nonetheless that it is exempt from the Illinois venue and arbitration provisions because its three claims are brought solely under the Shut-Down Agreement, and not under the Management Agreement.  (Resp. 7-9, 12.)  A close reading of Regions' allegations reveals that assertion to be incorrect as well.

While Counts I and II profess to seek enforcement of a separate oral "Shut-Down Agreement," these counts literally seek to modify the written terms of both the Management Agreement and the SNDA, without compliance with the writing requirement specified in the Management Agreement or with the statute of frauds.  (*See* Complaint, Ex. 2, par. 15.18.)  In

---

[2] As the state in which the hotel property is located, Illinois' Statute of Frauds would apply to the oral "Shut-Down Agreement" *McGinness v. Chambers*, 1 S.W.2d 1015, 1016 (Tenn. 1928) (laws of the state where immovable property is situated control its disposition); Restatement (Second) of Conflict of Laws, cmt. b (issues concerning interests in land are determined by the law that would be applied by the courts of the situs); *Hataway, et al v. McKinley*, 830 S.W.2d 53, 57-58 (Tenn.1992) (adopting the Restatement (Second) of Conflict of Laws for determining conflicts questions).

Case 3:09-cv-01054   Document 23   Filed 01/06/10   Page 8 of 21 PageID #: 454

Count III, Regions does not even mention the supposed "Shut Down Agreement," and instead asks the Court to determine that Regions "has not assumed the responsibilities of Drake Oak Brook Holdings under the terms of the Management Agreement." (*See* Complaint ¶ 49(a).) Accordingly, none of the counts of Regions' Complaint could be resolved by this Court without reference to and construction of the Management Agreement or the Assignment that expressly incorporates its terms. Those are, of course, the agreements that establish an exclusive venue of Illinois, and require arbitration proceedings if mediation fails.

Regions Bank cites *Crouch v. Guardian Angel Nursing*, *Inc.*, No. 07-00541, 2009 WL 3738095 (M.D. Tenn. Nov. 4, 2009) in support of its position that the Court should deny a "motion to dismiss based on a forum selection clause contained in a prior agreement." (Resp. at 8.)[3] Regions' reliance on *Crouch* is misplaced. First, *Crouch* did not involve multiple inter-related agreements concerning a single transaction. In *Crouch*, the defendants instead challenged venue on the basis of a forum-selection clause contained in independent contractor agreements signed by the plaintiffs. 2009 WL 3738095 at *2. Furthermore, the forum selection clauses in those independent contractor agreements were narrowly drafted to apply solely to actions to "enforce any provision of this Agreement." *Id.* In denying defendants' challenge to venue, the Court noted that plaintiffs had not brought claims against defendants to enforce the independent contractor agreements. Rather, plaintiffs had asserted violations of the Fair Labor Standards Act and related state tort law claims based on defendants' failure to pay overtime wages. *Id.* Because plaintiffs' tort claims did not implicate the independent contractor agreements, and because resolution of their claims did not require reference to those agreements, the court denied defendant's motion. *Id.* at 3.

Rather than aiding Regions' position, *Crouch* undermines its reasoning. The forum selection clause contained in the Management Agreement before the Court is broadly worded to apply to "any dispute, claim or issue arising under th[e] Agreement . . . ." (Complaint, Ex. 2, par. 14.) Under the approach taken in *Crouch*, application of the forum selection provision would be appropriate where - as here - resolution of the claims at issue relates to or depends upon an interpretation of the contract that contains that provision. *See Crouch,* 2009 WL 3738095 at *3.[4] Because Regions' claims cannot be resolved without reference to and interpretation of the Management Agreement, the claims before this Court fall within the scope of the agreement's forum selection, mediation, and binding arbitration provisions. *See also NCR Corp. v. Korala Associates, Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008) ("the cornerstone" of any analysis "rests upon whether [the court] can resolve the instant case without reference to the agreement containing the arbitration clause")

## II. As Assignee, Regions is Bound by the Hotel Management Agreement's Forum Selection Clause and Binding Arbitration Provision.

In the Assignment drafted by Regions Bank, Regions took an "absolute and present assignment" of the Management Agreement from Drake Oak Brook Holdings. (*See* Complaint, Ex. 6, Par. 1.) The Assignment attached the Management Agreement as an Exhibit, and expressly incorporated its terms into the Assignment. (Complaint, Ex. 6, Par. C.) Among those

---

[3] In accordance with L.R. 7.01(5), a complete text of the decision in *Crouch* is attached to this Reply as Exhibit J.

[4] Regions' reliance on *Friedberg v. Mutual Holdings, Ltd.*, No. 02-3193, 2005 WL 1213282 (E.D. Pa. May 19, 2005) and *Banco Inversion v. Celtic Fin. Corp.*, 907 So.2d 704 (Fla. Dist. Ct. App. 2005) is equally misplaced. In both those cases, the claims brought by Plaintiffs were "wholly outside and distinct" from the agreements containing the forum selection clause. Here, the dispute cannot be resolved without reference to and interpretation of the Management Agreement. In accordance with L.R. 7.01(5), a complete text of the decision in *Friedberg* is attached to this Reply as Exhibit K.

7

terms were express and conspicuous venue, mediation and binding arbitration provisions. (Complaint, Ex. 2, Pars. 14.1, 14.2, 14.4.) In its Response, Regions maintains that it is neither bound by the Management Agreement nor did it assume the obligations of Drake Oak Brook Holdings. What is most notable about Regions' arguments, though, is what it chooses to ignore.

First, Regions argues that the dispute resolution provisions apply only to the "Parties," which the Management Agreement defines as Wyndham and Drake Oak Brook Holdings. (Response at 10.) Regions altogether ignores Section 15.10 of the Management Agreement, which extends the rights and obligations under the agreement to the parties' "respective successors and assigns. . . ." (*See* Complaint, Ex. 2, Par. 15.10.) Second, Regions disregards a fundamental tenet of contract law - that rights and obligations under a contract are freely assignable. *See, e.g., Jackson v. Moskovitz Agency, Inc.*, 672 S.W.2d 400, 403 (Tenn. 1984). When a contract is assigned, the assignee steps into the shoes of the assignor. *See Aetna Cas. & Sur. Co. v. Tennessee Farmers Mut. Ins. Co.*, 867 S.W.2d 321, 323 (Tenn. Ct. App. 1993); *Binswanger Southern (N.C.), Inc. v. Textron, Inc.*, 860 S.W.2d 862, 865 (Tenn. Ct. App. 1993). When Regions took an absolute assignment of the Management Agreement, the contract rights and obligations under the Management Agreement were transferred to it as assignee. *See Pacific East. Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 959 (Tenn. Ct. App. 1995) (an assignment does not extinguish the underlying contract, but rather transfers it to the assignee).

Regions' contention that the Assignment is solely an "assignment for security" is equally without merit. Regions asserts that it had the "option," but not the obligation, to step into the shoes of the Owner. (Response at 6.) There are two notable failings in that argument. First, Regions cannot escape the clear language in the Assignment reflecting that Drake Oak Brook Holdings granted not only an assignment of a security interest, but an assignment of much

8

broader scope. The Assignor agreed to "grant, assign, transfer and set over . . . all of Assignor's right, title and interest in and to the Management Agreement. . . ." (Complaint, Ex. 6, Par. 1).[5] Regions' Response carefully insists upon characterizing the Assignment as merely "collateral", and repeatedly ignores its own, additional language confirming that the Assignment "shall constitute an absolute and present assignment . . . ." (Complaint, Ex. 6, Par. 4.)

Second, Regions' "absolute" assignment of the Management Agreement was further reinforced by the express contemplation of Regions and the Owner that Regions would assume the duties and obligations of the Owner in the circumstances that have in fact unfolded. Under Paragraph 2 of the Assignment, the Assignee Regions was to assume the obligations and duties under the Management Agreement when it provided written notice that "it has affirmatively exercised its right to take possession of the Hotel following an occurrence of an event of default under the Loan Documents." (Complaint, Ex. 6, Par. 2.)

There is no question that a default occurred under the Loan Documents. (Wyndham's Opening Brief, Ex. A, Complaint for Foreclosure.) Since the Owner's default, Regions has provided multiple written notices of the affirmative exercise of its rights, including the right to take possession of the hotel. Those notices are properly before this Court, either as exhibits to Regions' own Complaint, or as filings in the DuPage County, IL proceedings. For example, in a letter dated August 4, 2009 (attached for the Court's convenience as Exhibit H), Regions notified Wyndham of its intent to commence foreclosure proceedings. On September 24, 2009, Regions, through its wholly-owned affiliate Crestmoor, filed a foreclosure action in the Circuit Court for

_____

[5] To the extent the Courts deems the Assignment ambiguous, any ambiguity is to construed against Regions, the drafter of the document. *See, e.g., Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528, 531 (Tenn. 1991) (ambiguities in a contract are to be construed against the drafter).

DuPage County, naming Drake Oak Brook Holdings, LLC and others as defendants. (Wyndham's Opening Brief, Ex. A, Complaint for Foreclosure.) As counsel for Regions explicitly advised counsel for Wyndham, "Regions itself formed Crestmoor as a special purpose entity . . . to hold the note and mortgage during the pending foreclosure period, and in order to *serve as a mortgagee in possession* during the period of time between the closing of the hotel and any subsequent foreclosure and/or sale." (Complaint, Ex. 5, October 7, 2009 letter from John Rowland at 1, emphasis supplied.) Regions' affiliate then filed with the DuPage County Circuit Court a formal motion to become Mortgagee in Possession. (Motion, Ex. B to Wyndham's Opening Brief.) In November 2009, Crestmoor substituted a motion for appointment of a receiver, and selected as Receiver Mr. Tim Buss of NAI Hiffman. The Circuit Court approved Crestmoor's choice of Receiver after the fact, *nunc pro tunc*. (Order, Ex. C to Wyndham's Opening Brief.) The Receiver thereafter took possession of the hotel from Wyndham, after Wyndham closed down the operations of the facility for nonpayment by the Owner.

Regions Bank therefore took an "absolute" assignment of the Management Agreement from the Owner, in a document that expressly contemplated taking on the Owner's "obligations" in the circumstances presently before this Court. (Complaint, Ex. 6, Assignment, §§ C, E, 1, 2 and 4.) The Assignment attached and incorporated the terms of the Hotel Management Agreement, including exclusive Illinois venue and arbitration provisions. Wyndham therefore asks this Court to enforce those provisions, and dismiss this matter under Rule 12(b).[6]

---

[6] The Sixth Circuit has affirmed the procedure of dismissing an action under an unspecified subsection of Rule 12(b), as an appropriate means of enforcing forum selection clauses. *See, e.g.*, *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 371, n. 2 (6th Cir. 1999); *see also* discussion in *Langley v. Prudential Mortgage Capital Co., LLC*, 546 F.3d 365, 371 (6th Cir. 2008) (Moore, J., concurring).

### III. Contrary to Regions Bank's Representation, Courts Routinely Enforce Forum Selection Clauses and Binding Arbitration Provisions Against Assignees

Regions further argues that it is not subject to the Management Agreement's forum selection clause and binding arbitration provision because it was not a signatory to the agreement. The fact that a party is a non-signatory to an agreement, of course, does not preclude enforcement of a forum selection clause or binding arbitration provision. Traditional principles of state contract law can operate to bind a non-signatory to a contract generally, and therefore to forum selection or arbitration provisions contained in the contract. As the United States Supreme Court recently observed,

> Because 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ago, incorporation by reference, third-party beneficiary theories, waiver and estoppel,' (citation omitted), the Sixth Circuit's holding that nonparties to a contract are categorically barred from relief was error.

*Arthur Andersen LLP v. Carlisle*, __ U.S. __, 129 S.Ct. 1896 (March 3, 2009).

Federal district courts therefore regularly enforce forum selection clauses and arbitration provisions against assignees. For example, in *AtlasJet v. Eads Aeroframe Services, LLC*, No. 07-212, 2009 WL 436420 (S.D.N.Y. Feb. 17, 2009), the Defendant sought a transfer from the Southern District of New York to Louisiana arguing, in part, that Plaintiff, a non-signatory to the maintenance agreement, could not enforce the forum selection clause contained in the contract. *Id.* at *2. The court denied defendant's motion, noting that the assignment did not operate to extinguish the obligation under the agreement to proceed in New York. *Id.* at *3. *See also Canaan Enterprises, Inc. v. Mobile Container Service, Inc.*, No. 06-3254, 2007 WL 752266 (D.S.C. March 7, 2007) (in accepting assignment of a franchise agreement, plaintiff agreed to be bound by its terms, including the forum selection clause); *Actega Kelstar, Inc. v. Musselwhite*,

2009 WL 1794793 (D.N.J. Jan. 22, 2009) (the fact that Plaintiff was not a party to the original employment agreement does not prevent enforcement of the forum selection clause where plaintiff was the assignee of the contract rights)[7].

Similarly, in *Systran Financial Services Corp. v. Giant Cement Holding, Inc.*, 252 F.Supp.2d 500 (N.D. Ohio 2003), the court enforced an arbitration clause contained in a transportation service agreement against a secured creditor who took an assignment of accounts receivable, even though it was not a signatory to the agreement. The court noted that the secured creditor, as assignee, stood in the shoes of the assignor and that the arbitration provision constituted a contractual remedy that remained unaltered by the assignment. *Id.* at 505; *see also See Comedy Club, Inc. v. Improv W. Assoc.*, 553 F.3d 1277, 1287 (9th Cir. 2009) (noting that arbitration clauses may bind non-parties such as an assignee).

Established authority therefore supports the conclusion that Regions, as Assignee, has assumed the contract rights and obligations under the Management Agreement and is bound by its venue and dispute resolution provisions.[8]

### IV. Court is Not "Ceding" Any Duty By Enforcing Contractual Agreement to Permit Arbitrator to Decide Issue of Arbitrability

Regions goes to great lengths to establish a point that is not in dispute, *i.e.* that the question of arbitrability *normally* resides with the Court and not the Arbitrator. (Resp. at 14.)

---

[7] In accordance with L.R. 7.01(5), a complete text of the decisions in *AtlasJet*, *Canaan Enterprises*, and *Actega Kelstar* are attached to this Reply as Exhibits L, M, and N, respectively.

[8] In its opening brief, Wyndham cited *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369 (6th Cir. 1999), for the general proposition that district courts may enforce a forum selection clause through dismissal under Rule 12(b). Regions contends in its Response that *Security Watch* "indicates that Regions, as a non-signatory to the Management Agreement, is *not* bound by the forum selection clause." (Response at 10.) Regions does no service to this Court by so distorting the Sixth Circuit's decision. In fact, the Sixth Circuit never addressed whether AT&T, a non-signatory to the agreement, could enforce the forum-selection clause, because it deemed the issue to have been abandoned on appeal. 176 F.3d at 376.

However, Regions fails to address the issue presented by Wyndham's motion: whether parties may contractually agree to submit the issue of arbitrability to an arbitrator. *See, e.g., Preston v. Ferrer*, 552 U.S. 346 (2008). When Regions took the Assignment of the Management Agreement, it did so subject to an arbitration provision incorporating the JAMS ADR Rules. (*See* Complaint, Ex. 2, par. 14.1.) The current JAMS rules reserve, for decision by the arbitrator, jurisdictional and arbitrability disputes, including disputes over the "formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration . . . ." (JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(c), effective July 15, 2009.)

By requiring arbitration in accordance with the JAMS Rules, and thus incorporating Rule 11(c), the parties agreed to arbitrate jurisdictional issues relating to the formation and scope of any arbitration agreement, including whether the parties are proper. *See, e.g., Book Depot P'ship v. Am. Book Co.*, No. 05-163, 2005 WL 1513155, at *3 (E.D. Tenn. June 24, 2005) (noting that the majority of courts have held that when an agreement "incorporates rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator").[9]

Regions' efforts to distinguish the cases cited by Wyndham fall short of the mark. As the cases set forth in Section II.B make clear, courts routinely enforce arbitration provisions against non-signatory assignees. Moreover, such provisions are enforced as written, whether or not the non-signatory was aware of the provision or its contents. In *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W. 3d 861 (Tenn. Ct. App. 2002) the court, applying traditional contract principles, enforced an arbitration provision incorporated by reference, despite defendant's

assertions that he was not a party to the contract and was unaware of the existence and content of the arbitration clause. 93 S.W. 3d at 870. Regions, a sophisticated commercial party, presents an even less compelling set of circumstances. As the Assignment details, Regions granted prior approval to Drake Oak Brook Holdings to execute the Management Agreement. (*See* Complaint, Ex. 6, par. D.) Regions then attached the Management Agreement as an Exhibit to the Assignment and expressly incorporated its terms. (*See* Complaint, Ex. 6, par. C.) Regions cannot now argue that it is a stranger to the Management Agreement and should not be bound by its terms.

## V. Events since the filing of this Motion to Dismiss justify a Colorado River abstention.

The dispute between Regions and Wyndham continues to proceed in two separate courts, as Regions steadfastly ignores the arbitration requirements of the Management Agreement and the Assignment. In the DuPage County action, Regions' affiliate initially attempted to foreclose without naming Wyndham or alerting the court to the existence of the Management Agreement, Assignment or the SNDA. (Foreclosure Complaint, Ex. A to Wyndham's Opening Brief.) Those agreements grant continuing rights to Wyndham to manage this property free of disturbance from the lender, with funding that was initially due from the Owner and now is due from Regions as the Owner's Assignee. The Circuit Court for DuPage County granted Wyndham leave to intervene as a defendant (November 3, 2009 Order granting Wyndham's Petition for Leave to Intervene, attached to this Reply as Exhibit I) and Wyndham has now answered and raised Affirmative Defenses to the foreclosure proceedings. (Wyndham Answer and Affirmative Defenses, attached to this Reply as Ex. G.)

---

[9] In accordance with L.R. 7.01(5), a complete text of the decision in *Book Depot* is attached hereto as Exhibit O.

The Answer and Affirmative Defenses, filed after Wyndham's motion to dismiss this case, place before the DuPage County court many of the issues on which Regions seeks a declaratory judgment from this Court. In particular, the DuPage County court will be called upon to decide whether (1) whether Regions and its affiliate Crestmoor are bound by the SNDA and Management Agreement that currently encumber this property, (2) whether Regions procured the alleged oral agreement with Wyndham to eliminate those encumbrances, (3) whether fraud in the inducement, and/or the lack of a signed writing, invalidate the effect of any such oral agreement, and (4) whether resolution of any such matters must await the outcome of proceedings required by the mandatory arbitration clause, recited in the Management Agreement and incorporated by reference into the Assignment.

Accordingly, the case before this Court has become a matter appropriate for *Colorado River* abstention. *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). As this Court is well aware, the doctrine authorizes a district court to stay a federal proceeding due to "the presence of a concurrent state proceeding for reasons of wise judicial administration." *Iron Workers of Western Pa. Pension Plan v. Caremark RX, Inc.*, No. 06-1097, 2007 WL 60927 at *2 (M.D. Tenn. January 5, 2007)(hereinafter "*Caremark*").[10]

This case satisfies each of the *Colorado River* criteria, as they have been interpreted by the Sixth Circuit and in this District. The parties to this action are congruent with the parties to the DuPage County action. Regions is the plaintiff here, while the plaintiff in the DuPage action is Regions' specially-formed, wholly-owned subsidiary, designed to take the assignment of Regions' interests in the underlying mortgage and other documentation, and to foreclose upon the Drake Oak Brook Hotel. Wyndham is the defendant here, and one of the defendants in the

DuPage County proceeding (along with a collection of vendors to the Drake Oak Brook hotel).[11]

The cases are "substantially similar," although the DuPage County action is broader in scope.

Findings from the DuPage County court on the issues listed above should resolve the issues

pending before this Court.  Measured by the eight factors the Supreme Court has identified,

> (1) The state court has assumed jurisdiction over the res, the hotel property.
>
> (2) The federal forum is not the jurisdiction in which either party is incorporated or has its principal place of business.  Regions is incorporated, and maintains its principal place of business, in Alabama. (Complaint, Par. 1.) Wyndham Hotel Management is incorporated in Delaware, with its principal place of business in Parsippany, New Jersey. (*Id.*, Par. 2.) The only discernable witness who may be found in Nashville is former counsel for Regions, John Rowland.
>
> (3)  Abstention will assist in avoiding piecemeal litigation.
>
> (4)  Regions filed the DuPage action first, and filed this suit only after Wyndham was permitted to intervene in that proceeding.
>
> (5)   The source of governing law is exclusively state, encompassing Illinois real estate law, as well as the New Jersey choice of law provision in the Management Agreement, Tennessee law set for certain aspects of the Assignment, and the New York law set for the SNDA.
>
> (6)  The state court, chosen by Regions, is adequate to protect its rights.
>
> (7)  Each case is in its early stages, although answers have been filed to the foreclosure action.
>
> (8)  Illinois is the exclusive jurisdiction for disputes arising in connection with the Management Agreement and the Assignment, under the applicable contractual provisions, and Illinois procedures govern an action to foreclose upon and sell Illinois real estate.

---

[10]  In accordance with L.R. 7.01(5), a complete text of the decision in *Caremark* is attached hereto as Exhibit P.

[11]  The fact that the parties are not literally identical is "not relevant to *Colorado River* abstention."  *Caremark*, 2007 WL 60927 at *3.

*Compare Caremark*, 2007 WL 60927 at *4-6.

Abstention under the Colorado River doctrine would therefore avoid the duplication of judicial efforts, and the potential for conflicting results. It would serve the interests of justice to stay this action, pending resolution by the Illinois courts and arbitrators of the issues that Regions has now asked this Court to resolve instead.

**CONCLUSION**

The action before this Court is governed by a contractual forum selection clause that specifies Illinois as the exclusive venue for judicial and arbitration proceedings. The underlying Management Agreement, and therefore the Assignment that incorporates it, requires that the parties resolve their disputes, if mandatory mediation fails, by binding arbitration in Illinois. As Assignee, Regions is bound by those provisions. Accordingly, Wyndham respectfully prays that this Court dismiss the pending action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

In the alternative, Wyndham asks this Court to stay all proceedings pending the mandatory mediation and arbitration required by the underlying agreements, or to abstain in accordance with the *Colorado River* doctrine.

Respectfully submitted,

HARWELL HOWARD HYNE
GABBERT & MANNER, P.C.

s/ Alexandra Coulter Cross
Alexandra Coulter Cross (BPR #017726)
Jeffrey J. Miller (BPR #017122 )
315 Deaderick Street, Suite 1800
Nashville, Tennessee 37238
(615) 256-0500 - Telephone
(615) 251-1058 - Facsimile
acc or jjm@h3gm.com

17

and

Paula J. Morency (IL Bar #3127506)
Ayad Paul Jacob (IL Bar #6280274)
Schiff Hardin LLP
233 South Wacker Drive, Suite 6600
Chicago, IL 60606-6473
(312) 258-5549 - Telephone
(312) 258-5600 – Facsimile
pmorency or ajacob@schiffhardin.com

Attorneys for Wyndham Hotel Management, Inc.

## CERTIFICATE OF SERVICE

      I hereby certify that I have on this day, filed electronically via CM/ECF a true copy of the within and foregoing Motion, with notice of same being electronically served by the Court, addressed to the following:

David E. Lemke
Lea Carol Owen
Michael Harmon
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Email: david.lemke@wallerlaw.com
       carol.owen@wallerlaw.com
       Michael.harmon@wallerlaw.com

      s/ Alexandra Coulter Cross
      Alexandra Coulter Cross