UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| REGIONS BANK, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:09-1054 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| WYNDHAM HOTEL MANAGEMENT, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss Pursuant to Forum Selection Clause or in the Alternative to Stay Pending Arbitration (Docket No. 12) filed by the defendant, Wyndham Hotel Management, Inc. ("Wyndham"). For the reasons discussed herein, the motion will be granted, and this case will be dismissed without prejudice to be pursued in Illinois, which is the appropriate forum for this dispute.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the failure of the Drake Oak Brook Hotel (the "Hotel"), a full-service, business class hotel that was located in the Chicago suburb of Oak Brook, Illinois.[1] On January 10, 2008, an entity called Drake Oak Brook Holdings, LLC ("DOBH"), purchased the Hotel, funding the acquisition with a $16,660,550 loan obtained from the plaintiff, Regions Bank ("Regions").

There are three other relevant agreements that were entered into on January 10, 2008, in

---

[1] Unless otherwise noted, the facts are drawn from the plaintiff's Complaint (Docket No. 1).

1

conjunction with the Hotel sale. First, DOBH and the defendant Wyndham entered into a Hotel Management Agreement ("HMA"), by which Wyndham agreed to be responsible for the "management, maintenance, and operation of" the Hotel. (Docket No. 2 Ex. 2.) The HMA provides that "any dispute, claim or issue arising under" the HMA will be resolved by first attempting to mediate the dispute and, if that fails, then by binding arbitration. (*Id.* at 38.) The HMA also states that any judicial proceedings will take place at the "Situs" of the Hotel, that is, in the "city or unincorporated district" in which the Hotel is located, and that "[e]ach Party irrevocably submits to the exclusive jurisdiction of the federal or state courts located at the Situs." (*Id.* at 39.) Additionally, the HMA states that it is made "for the sole protection and benefit of [Wyndham] and [DOBH] and their respective successors and assigns." (*Id.* at 43.)

Second, DOBH, Wyndham and Regions entered into a Subordination and Non-Disturbance Agreement ("SNDA"). (Docket No. 2 Ex. 3.) This agreement recognizes that DOBH and Wyndham entered into the HMA and that Regions extended the loan to DOBH for the purchase of the Hotel. (*Id.* at 1.) The SNDA states that, pursuant to these agreements, Regions is requiring that Wyndham and DOBH enter into the SNDA. (*Id.*) Consistent with this, the SNDA provides a series of protections for Regions in the event of DOBH's default. The SNDA provides, among other things, (1) that Wyndham's right to management fees is subordinate to the lien held by Regions on the Hotel, (2) that Wyndham consents to the "collateral assignment" of the HMA to Regions, and (3) the procedure through which Regions may foreclose on the Hotel in the event of default by DOBH and recover monies pursuant to holding the senior lien on the Hotel. (*Id.* at 1-3.) The SNDA, however, does protect Wyndham's rights to continue to manage the Hotel in the event of a default by DOBH, so long

as Wyndham is "in compliance with the terms and conditions" of the HMA. (*Id* at 2.)

Third, Regions and DOBH entered into an Assignment of Management Agreement (the "Assignment Agreement"). The Assignment Agreement recognizes the HMA, "incorporate[s it] herein," and attaches it as an Exhibit to the Assignment Agreement. (Docket No. 2 Ex. 6 at 1.) Under the Assignment Agreement, DOBH "does grant, assign, transfer and set over unto [Regions], and grant [Regions] a security interest in and to, all of [DOBH's] right, title and interest in and to the [HMA] . . . for the performance of day-to-day management and leasing of the Hotel." (*Id.*) While the Assignment Agreement states that it constitutes an "absolute and present assignment" of DOBH's "rights and interest" in the HMA, it gives Regions "no right" to enforce the provisions of the HMA until DOBH "is in default." (*Id.* at 1-2.) And Regions did not assume "any of the obligations or duties" of DOBH under the HMA "unless and until [Regions] shall have given [Wyndham] written notice that it has affirmatively exercised its right to take possession of the Hotel" following a default by DOBH. (*Id.*) In January 2008, Wyndham began managing the Hotel, and DOBH started paying management fees to Wyndham and mortgage payments to Regions.

In summer 2008, DOBH went into default on its loan obligations to Regions and on its management fee payments to Wyndham. Indeed, the plaintiff's Complaint states that the individuals behind DOBH were responsible for a massive ponzi scheme that collapsed in the summer of 2008, resulting in criminal and civil proceedings in the District Court for the Southern District of New York and default by DOBH on its obligations to Regions and Wyndham. The plaintiff states that, in the civil proceedings, a Receiver was appointed to manage the assets involved in the scheme, including the Hotel. However, on May 1, 2009, "the

3

Receiver obtained Court approval to relinquish . . . the [Hotel and] . . . [a]ppropriate orders have been entered allowing action by Regions and removing the Receiver from any involvement" with the Hotel. (Docket No. 1 at 4.)

According to the Complaint, by the summer of 2009, it was apparent to all concerned parties (including Regions and Wyndham) that the Hotel would have to be shuttered, and the parties agreed to close the Hotel on September 30, 2009. Regions alleges that, "[i]n order to effectuate an orderly shut down of operations . . . Wyndham needed an infusion of cash." (Docket No. 1 at 5.) Regions claims that, on or about August 7, 2009, the parties reached a separate agreement, which it terms the "Shut-Down Agreement," by which, among other things, Regions agreed to pay Wyndham $180,000 in exchange for Wyndham's agreement to terminate the HMA and SNDA "such that, on the date of the shut-down, the property would not be encumbered by any claims asserted by Wyndham with respect to these agreements." (*Id.*)

Regions claims that it provided the $180,000 in funding and otherwise met its obligations under the Shut-Down Agreement, and, while the closing of the Hotel was postponed until the end of October, Regions believed that Wyndham was also complying with the terms of the Shut-Down Agreement. However, on October 5, 2009, "Wyndham suddenly advised Regions that it considered Regions' conduct to have violated Wyndham's rights under the SNDA." (*Id*. at 6.) Specifically, Wyndham claimed that, in violation of the SNDA, Regions had assigned its interest in the Hotel to an entity called "Crestmoor" without notifying Wyndham and that Regions never informed Wyndham of the Assignment Agreement. (Docket No. 2 Ex. 5 at 2; Docket No. 13 at 4.)

Wyndham contends that a contract along the lines of the Shut-Down Agreement cited by

4

Regions was never finalized. That is, while Wyndham "originally agreed orally to work with Regions Bank," on the termination of the relevant agreements, Wyndham abandoned such efforts after learning that Regions had concealed pertinent information from Wyndham. (Docket No. 13 at 5.) The parties also recognize that, since September 24, 2009, a foreclosure action relating to the Hotel has been pending in the Circuit Court for DuPage County in Illinois, in which (1) Crestmoor has filed a Complaint seeking to foreclose on the Hotel, (2) the Circuit Court has, at Crestmoor's request, appointed a Receiver for the Hotel, and (3) Wyndham has intervened, claiming that, under the non-disturbance provisions of the SNDA, Crestmoor is not permitted to foreclose on Wyndham's interest in the Hotel. (Docket No. 13 Ex. C; Docket No. 23 Ex. G.)

On November 3, 2009, Regions filed a three-count Complaint in this court against Wyndham, asserting that (1) Wyndham had breached the Shut-Down Agreement by failing to terminate the HMA and SNDA, (2) Wyndham was unjustly enriched by receiving funds under the Shut-Down Agreement but not terminating the HMA and SNDA, and (3) the court should enter a declaratory judgment that Regions has not "assumed the responsibilities" of DOBH under the HMA and that Regions' transfer of interest to Crestmoor was not in violation of the SNDA. (Docket No. 1 at 7-8.) On November 30, 2009, Wyndham filed the pending Motion to Dismiss. (Docket No. 12.) After full briefing, this motion was held in abeyance while the parties conducted a mediation, but, as that mediation was apparently unsuccessful in resolving this dispute, the Motion to Dismiss is now ripe for consideration.

## ANALYSIS

Under Federal Rule of Civil Procedure "12(b)" and 12(b)(6) Wyndham has moved to dismiss the Complaint on the grounds of the forum selection clause found in the HMA, or,

5

alternatively, to stay the proceedings pending the alternative dispute resolution procedure envisioned by the HMA. (Docket No. 12.) In its Reply in Support of its Motion to Dismiss, Wyndham argues that, as another alternative to dismissal, the court should stay these proceedings under the *Colorado River* abstention doctrine, in light of the pending proceedings in DuPage County. (Docket No. 23 at 14.)

**I.      Forum Selection Clause**

There are two main issues raised by the forum selection clause. The first issue is whether Regions' facial pursuit of claims under the "Shut-Down Agreement" removes this case from the purview of the HMA and the forum selection clause therein. The second issue, assuming that the case remains within the purview of the HMA, is whether Regions, as a non-signatory to the HMA, can be bound by the forum selection clause in the HMA.

**A.      The Shut-Down Agreement**

As noted above, Wyndham contends that there was never a finalized Shut-Down Agreement on which Regions can sue. In support of this position, Wyndham points to e-mails and letters between the parties that were sent in the late Summer and Fall of 2009 and that were filed by Regions along with its Complaint. (Docket No. 2 Exs. 4-5.) Wyndham argues that this correspondence shows that Regions' representatives pushed hard for an agreement that would result in Wyndham's abandoning its rights under the SNDA and the HMA in exchange for cash, but, despite this push and agreement on certain deal points, there was never a final agreement, and Wyndham abandoned negotiations in October 2009. (*Id.*; *see also* Docket No. 23 at 1-2.)

While both sides use the limited record to attempt to debate the existence of the oral Shut-Down Agreement, the key issue, at this point, is not whether the Shut-Down Agreement

6

was a valid contract. For purposes of this motion, the question is whether this dispute presents any "dispute, claim, or issue" arising under the HMA. If so, then the applicability of the forum selection clause in the HMA becomes relevant.

Wyndham contends that "[e]ach Count of the [] Complaint . . . presents 'claims, issues and disputes' that arise under the [HMA]." (Docket No. 13 at 7.) That is, in seeking to "modify the written terms of both the HMA and the SNDA," each of the claims asserted by Regions in this case raises issues relating to Wyndham's responsibilities under the HMA, and none of the claims "could be resolved by the Court without reference to and construction of the HMA . . . ." (Docket No. 23 at 5-6.) Such disputes as these, Wyndham argues, are subject "to an unambiguous and enforceable forum selection clause providing for exclusive jurisdiction in Illinois . . . ." (Docket No. 13 at 7.)

In response, Regions primarily argues that, because it states in its Complaint that it is suing under the "Shut-Down Agreement," the forum selection clause of the HMA has no bearing on the case. (Docket No. 17 at 7-9.) Indeed, Regions argues that, "when a plaintiff brings suit under a later-entered agreement that does not contain a forum selection clause, the Court should deny a defendant's motion to dismiss based on a forum selection clause contained in a previous agreement." (*Id.* at 7-8 citing *Crouch v. Guardian Angel Nursing, Inc.*, 2009 WL 3738095, \*3 (M.D. Tenn. Nov. 4, 2009)(Wiseman, J); *Friedberg v. Mutual Holdings, Ltd.*, 2005 WL 1213282, \*4 (E.D. Pa. May 19, 2005); *Banco Inversion v. Celtic Fin. Corp.*, 907 So. 2d 704, 709-10 (Fla. Dist. Ct. App. 2005)).

Assuming for the moment that the "Shut-Down Agreement" constitutes a valid "later-entered agreement," the three cases relied upon by Regions do not establish this broad

7

proposition or that Regions would not be bound by the forum selection clause in the HMA. That is, none of these cases involves the type of multiple inter-related agreements found here. Rather, they involve readily distinguishable situations in which the plaintiff asserted claims (under statutes and common law) that the court determined were simply outside of the scope of the contract that contained the forum selection clause. *See e.g. Crouch*, 2009 WL 3738095 *3 (finding that the contract put forth by the defendants was not broad enough to cover the FLSA claims brought by the plaintiffs).

Based on the record before the court, this case clearly presents "claims, issues, and disputes" that arise under the HMA. For instance, Regions' declaratory judgment claim seeks a judgment that Regions "has not assumed the responsibilities of [DOBH] under the terms of the [HMA]." (Docket No. 1 at 8.) Additionally, the breach of contract and unjust enrichment claims are based upon Regions' assertions that Wyndham was under an obligation to terminate the HMA. (*Id.* at 7.) The forum selection clause at issue here is quite broad, and, to the extent that Regions is bound by that clause, the forum selection clause clearly applies to the claims asserted here.

### B. The Applicability of the Clause to Regions

Wyndham contends that Regions is subject to the forum selection clause, even though Regions was not a signatory to the HMA. (Docket No. 13 at 8.) Wyndham points out that the HMA states that it is made for the "protection and benefit" of the parties to the agreement and also "their respective successors and assigns." (*Id.*) Moreover, the Assignment Agreement, to which Regions was a signatory, explicitly incorporates and attaches the HMA, thereby, Wyndham claims, making Regions bound by its terms, including the forum selection clause.

8

(*Id.*)

In response, Regions argues that, as a non-signatory, it should not be bound by the terms of the HMA, particularly in light of the fact that the forum selection clause explicitly and repeatedly refers to the "Parties" as being bound by the terms of the forum selection clause, indicating that non-parties, such as Regions, are not bound by the clause. (Docket No. 17 at 10.) Regions also argues that the Assignment Agreement merely gave Regions a "security" interest such that, in the event of default, it had the option to exercise DOBH's rights under the HMA, and, therefore, the Assignment Agreement did not bind Regions to the terms of the HMA or guarantee that Regions would perform under the HMA. (*Id.* at 11.)

As Regions recognizes, a non-signatory to a contract may be bound by a forum selection clause in that contract if the non-signatory is sufficiently "closely related" to the dispute such that it becomes "foreseeable" that the non-party will be bound by the clause. *Washburn v. Garner*, 2005 WL 1907530, *11 (W.D. Ky. Aug. 10, 2005)(citing *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1105-06 (6th Cir. 1997)). Regions argues that Wyndham has failed to show that Regions was "closely related" in this circumstance and that, "had the parties anticipated that Regions would be so closely related to any dispute as to come under the forum selection clause, the parties would have defined Regions as a party to such clause or included such a forum selection clause in the SNDA." (Docket No. 17 at 10.)

While there is not an abundance of case law interpreting the "closely related" standard in this, relatively complex, context, some guidance is provided by the district courts in this Circuit. For instance, in *Washburn*, several plaintiffs sued the defendant over a contract entered into by one of the plaintiffs and the defendant for the sale of a plane. The contract had a forum selection

9

clause that provided that "any dispute" arising under the contract would be resolved in Florida. 2005 WL 1907530, at *2, *8. One of the plaintiffs, who had acquired an interest in the plane subsequent to the contract, argued that he should not be bound by the forum selection clause because he was not a party to the contract that contained the clause. *Id.* at *11. The court rejected this argument, finding that, at the time that the plaintiff acquired the interest in the plane, it would be reasonably foreseeable *to that plaintiff* that he could be bound by the forum selection clause between the original buyer plaintiff and the defendant who sold the plane. *Id.*

In another case, the District Court for the Northern District of Ohio concluded that a forum selection clause in a licensing agreement between the plaintiff and the DuPont company could not be enforced by DuPont's licensing agent (EMI), when EMI was sued by the plaintiff. *Thorworks Industries v. E.I. Dupont de Nemours*, 606 F. Supp. 2d 691, 697 (N.D. Ohio 2008). In finding that EMI was not sufficiently "closely related" to enforce the forum selection clause, the district court noted that EMI, as the licensing agent, did not "directly benefit" from the agreement between the plaintiff and DuPont, as EMI could not enforce the forum selection clause in its own right. *Id.* The court also noted that EMI was not "sufficiently close" to either party such that "it could foreseeably benefit from the forum selection clause." *Id.* at 697-98.

In another case, the District Court for the Southern District of Ohio listed typical examples of where a sufficiently close relationship may be found, such as where the non-signatory is in an agency relationship with one of the parties to the contract with a forum selection clause, where the non-signatory is a third-party beneficiary of the contract, or where a corporation is a party to a contract with a forum selection clause and one of the officers, directors or shareholders of the corporation is engaged in litigation under that contract. *Highway*

10

*Commercial Servs., Inc. v. Zitis*, 2008 WL 1809117, *4 (S.D. Ohio April 21, 2008). In *Zitis*, the court found that none of these relationships was implicated and noted that the non-signatory was an "entirely separate" legal entity from the signatories to the contract. *Id.* at *4-5. On these bases, the court concluded that the forum selection clause did not apply to the non-signatory. *Id.*; *but see Hasler Aviation, LLC v. Aircenter, Inc.*, 2007 WL 2463283, *6 (E.D. Tenn. Aug. 27, 2007)(enforcing forum selection clause against non-signatory subcontractors to the relevant contract, as it should have been foreseeable to them that the forum selection clause could be applied to them).

In sum, it is clear from these cases that courts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a non-party to the forum selection clause. As noted above, this approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute. The question, then, is whether, in light of all of the circumstances of this case and what should have been reasonably foreseeable to Regions, it is fair and reasonable to conclude that Regions is sufficiently "closely related" to the parties to the HMA that Regions should be bound by the forum selection clause. On this standard, the court concludes that Regions should be so bound.

In the Assignment Agreement, Regions "required that [DOBH] assign to [Regions] its rights and interest in the" HMA. (Docket No. 2 Ex. 6.) Indeed, under its plain terms, the Assignment Agreement "constitute[s] an absolute and present assignment" of DOBH's rights

11

under the HMA to Regions. (*Id.* at 2.) Typically, under basic contract law, an assignment of a contract dictates that an assignee such as Regions would step "into the shoes" of the assignor. *Ward v. Sun Valley Foods*, 212 Fed. Appx. 386, 391 (6th Cir. 2006). Here, as discussed above, the actual terms of the assignment did not impose any obligations on Regions unless Regions, with notice to Wyndham, elected to "affirmatively exercise[] its right to take possession of the Hotel following occurrence of an event of default under the Loan Documents." (Docket No. 2 Ex. 6 at 1-2.)

The "springing" nature of the assignment, however, does not considerably affect the analysis. It must be remembered that the fundamental issue at this point is whether, in light of all of the circumstances, Regions is sufficiently "close" to the HMA to be fairly bound by the forum selection clause therein. Here, under the Assignment Agreement, Regions took considerable rights under the HMA, including the right to enforce the HMA in the event of DOBH's default. Therefore, through the Assignment Agreement, Regions stood in the position to "directly benefit" from the HMA. *Thorworks*, 606 F. Supp. 2d at 697.

Moreover, the Assignment Agreement explicitly "incorporates" the HMA and attached the HMA as an Exhibit. (Docket No. 2 Ex. 6 at 1.) Generally, a non-signatory may become bound by a contract when that contract is "specifically incorporated by reference" by another contract to which the party is a signatory. *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984); *see also Commodore Factors Corp. v. Pittsburgh Tank & Tower Co.*, 2009 WL 3378964, *1 (W.D. Ky. Oct. 16, 2009)(extending this notion, in theory, to bind a non-signatory to a forum selection clause).

Again, it is not necessary, at this point, to determine the precise legal effect of the

incorporation. Rather, Regions' status as a party to an agreement that "incorporated" and attached the HMA alone provides considerable additional support for the notion that it is fair to bind Regions to the forum selection clause in the HMA, particularly because, as discussed above, the HMA stated that it is entered into for the benefit of the parties and their "successors and assigns." Simply put, the incorporation further brought Regions into a "close relationship" with the HMA.

As noted above, the SNDA also gives Regions an interest in the HMA. Indeed, that Agreement provides that Wyndham may continue to manage the Hotel in the event of a default by DOBH, so long as Wyndham is "in compliance with the terms and conditions" of the HMA. (Docket No. 2 Ex. 3 at 2.) This provision provides Regions with an additional vehicle to enforce rights based upon the provisions of the HMA. In light of all of this, it is clear that Regions is sufficiently "closely related" to the HMA to be bound by the forum selection clause therein. Therefore, the court finds the forum selection clause binding upon Regions in this case.[2]

### C. Dismissal in light of the Forum Selection Clause

In a recent case, the Sixth Circuit held that, in diversity suits such as this one, "the enforceability of [] forum selection clause[s] is governed by federal law," and, under federal law, "a forum selection clause should be upheld absent a strong showing that it should be set aside." *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. Dec. 21, 2009). That is, on a defendant's motion to dismiss, absent a compelling showing by the plaintiff, a case filed in a

---

[2] As the court finds the defendant's primary argument (that the forum selection clause is binding upon Regions) meritorious, it is not necessary to consider the defendant's alternative arguments that this case should be stayed pending arbitration or stayed on the basis of *Colorado River* abstention.

13

forum not envisioned by the forum selection clause should be dismissed. *See id.* at 825.

In making this "strong showing," the party opposing the motion to dismiss bears the burden of demonstrating that (1) the clause was "obtained by fraud, duress, or other unconscionable means," (2) the "designated forum would ineffectively or unfairly handle the suit," or (3) the designated forum "would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* at 828. Here, Regions has not attempted to maintain that the forum selection clause was obtained through "fraud, duress, or other unconscionable means" or that Illinois would be an unfair or inconvenient forum to resolve this dispute. (*See* Docket No. 17.) Indeed, other than asserting the arguments discussed above that the forum selection clause does not apply, Regions does not challenge that this case should be dismissed on the basis of the forum selection clause.[3]

The proper procedural vehicle for dismissing a case on the basis of a forum selection clause has been the source of considerable debate and some confusion.[4] In Judge Moore's concurrence in *Langley v. Prudential Mortgage Capital Co., LLC.*, she distinguished cases in which dismissal is sought from those in which transfer of venue is sought and stated that Rule

---

[3] Indeed, it appears from Regions' correspondence with Wyndham that Regions created Crestmoor as a "special purpose entity" to pursue the foreclosure of the Hotel and that that entity is pursuing relief in DuPage County, Illinois, which indicates that Regions does not view Illinois as an unfair or inconvenient forum to resolve disputes related to these agreements. (Docket No. 2 Ex. 5 at 4.)

[4]*See Painting Co. v. Weis Builders, Inc.*, 2009 WL 150674, *5 (S.D. Ohio Jan. 21, 2009)(collecting cases that rely on, among other things, Rule 12(b)(1)[lack of subject matter jurisdiction] and Rule 12(b)(3)[improper venue]); *Heinz v. Grand Circle Travel*, 329 F. Supp. 2d 896, 899 (W.D. Ky. 2004)(also collecting cases that rely on, among other things, Rule 12(b)(6)[failure to state a claim upon which relief can be granted], while other cases dismiss without defining the precise basis).

14

12(b)(6) is the proper procedural vehicle for dismissing a claim on the basis of a forum selection clause (in contrast to Rule 12(b)(3)), while recognizing that another Sixth Circuit case had affirmed dismissal on forum selection clause grounds on the basis of "Rule 12(b)." 546 F.3d 365, 371 (6th Cir. 2008)(citing *Security Watch, Inc. v. Sentinel Sys, Inc.*, 176 F.3d 369, 374-376 (6th Cir. 1999)). Hedging its bets, Wyndham cites both Rule 12(b)(6) and "Rule 12(b)" as its bases for dismissal. (Docket No. 12 at 1 and Docket No. 13 at 1.)

Most recently, in *Wong*, the Sixth Circuit implied that the doctrine of *forum non conveniens* was the proper basis for dismissal. 589 F.3d at 830. While the defendant in *Wong* was a foreign entity, the Sixth Circuit did not clearly distinguish on that basis and at least one district court in this Circuit has relied upon *Wong* and *forum non conveniens* to dismiss a case brought against a U.S. resident on the basis of a forum selection clause. *See Total Quality Logistics v. Cavendish Farms, Inc.*, 2010 WL 348316, *5 (S.D. Ohio Jan. 26, 2010).

It is not necessary to resolve this issue here. The important point is that, in *Wong*, the Sixth Circuit reiterated that "a forum selection clause should be upheld absent a strong showing that it should be set aside" and the party challenging the clause has the burden to demonstrate that it should not be enforced. 589 F.3d at 828. Regions has failed to put forth any of the typical proof regarding inconvenience and the desirability of the proposed forum versus the current forum that courts usually weigh. Therefore, Regions has clearly failed to meet its burden in this case.[5] *See Total Quality Logistics*, 2010 WL 348316 at *3. Therefore, this case will be

---

[5] In briefing, Regions operates under the assumption that Wyndham's motion is a typical Rule 12(b)(6) motion, and, therefore, the court "must assume that all factual allegations are true, even if they are doubtful in fact." (Docket No. 17 at 6)(citing *Bell Atlantic Corp. v. Twombly*,

dismissed, without prejudice, in light of the forum selection clause.

## CONCLUSION

For the reasons discussed above, Wyndham's Motion to Dismiss will be granted and this case will be dismissed, without prejudice, to be pursued in the appropriate jurisdiction.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

550 U.S. 544, 555 (2007)). Going further, Regions argues that, "to accept Wyndham's arguments, at a minimum, the Court must assume facts related to the Assignment in Wyndham's favor. Therefore, at this stage, the Court must deny Wyndham's Motion to Dismiss." (Docket No. 17 at 11.) As discussed above, the precise procedural vehicle for considering dismissal based upon a forum selection clause is somewhat unsettled. However, under *Wong*, the Sixth Circuit has instructed that, in situations in which there is an enforceable forum selection clause and the plaintiff has raised no valid defense to enforcement of that clause, the clause should be enforced and the case dismissed. Further, there is no reason, on this record, to believe that Illinois would not be the preferred forum for this litigation. Indeed, under typical *forum non conveniens* analysis, after the court determines that there exists an "adequate alternative forum" for the dispute (here, Illinois) the court considers "public and private factors," such as "ease of access to sources of proof; availability of compulsory process; court congestion; the interest of having the trial of a diversity case in a forum familiar with the controlling law; and the unfairness of burdening the jury in a forum unrelated to the dispute," to determine whether the litigation would best proceed in the original forum or in the alternative forum. *See Total Quality Logistics*, 2010 WL 348316 at *5. Given that, as discussed above, the Hotel is located in Illinois and the fact that a Regions-created entity is pursuing relief under the relevant contracts in Illinois, there is no reason to believe that Illinois would not be the more convenient forum to resolve this dispute.

16